IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:13cr73-MHT |
| OMARIOUS SHARUSSELL GREENE | ) | (WO) |


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:05cr67-WHA |
| OMARIOUS SHARUSSELL GREEN | ) | (WO) |


OPINION

Defendant Omarious Sharussell Greene attempted to buy
three kilograms of cocaine from an individual who turned
out to be a federal agent.  The court had before it two
cases involving charges against Greene arising from this
conduct.  In the first case, United States v. Greene,
criminal action no. 2:13cr73-MHT, the issue before the
court was sentencing for a new criminal conviction upon
his guilty plea to one count of conspiracy to possess
with intent to distribute 500 grams or more of a mixture
containing a detectable amount of cocaine powder, 21

U.S.C. §§ 846, 841(a)(1).  In the second, older case,
United States v. Green, criminal action no. 2:05cr67-WHA,
the court had before it a petition to revoke Greene's
supervised release based on this same conduct, to which
he also pled guilty.[1]

The court held a joint hearing in both cases.[2]  In
the new case, the court granted Greene's motion for a
variance pursuant to 18 U.S.C. § 3553(a).  The court then
imposed a sentence at the mandatory-minimum level of 120
months for the new conviction and 30 months for the
supervised-release violation, with both sentences to run
concurrently.  The court orally gave its reasons for the
variance and sentences at the joint hearing; however, for

_____

1.  On the court's docket for one of the cases,
Greene's name is spelled "Greene," while on the docket
for the other it is spelled "Green."  At the joint
hearing in both cases, Greene made clear that the former
is the correct spelling of his name.

2.  The revocation petition was initially assigned to
another judge.  However, the other judge and the parties
agreed to have both matters heard and decided together by
the undersigned.

the sake of clarity, this opinion memorializes
those reasons.

## I.

With regard to the new criminal case, the court found
two factors to be particularly important in its decision
to grant a § 3553 variance.

## A.

The first factor the court considered was the
application of USSG § 4B1.1, the career-offender
guideline of the U.S. Sentencing Guidelines, in light of
the fact that Greene was only 16 years old at the time of
one of the predicate offenses.  Guideline 4B1.1 provides
for increased penalties for individuals deemed career
offenders.  A defendant with two prior felony convictions
of either crimes of violence or controlled-substance
offenses may qualify as a career offender.  USSG

§ 4B1.1(a).[3]  Once the career-offender guideline is found
to apply, the Sentencing Guidelines severely increase the
recommended penalties.

In this case, the difference in the guideline ranges
is marked.  The applicable guideline provided for a base-
offense level of 28 based on the amount of drugs at
issue.  USSG § 2D1.1(c)(6).  With the career-offender
guideline and based on the statutory maximum of life for
this offense, the offense level was instead 37.  USSG
§ 4B1.1(b)(1).  However, with or without the career-
offender guideline, the offense level would be reduced in
this case by a total of seven levels based on two
factors: acceptance of responsibility, USSG § 3E1.1, and
substantial assistance, USSG § 5K1.1.  Therefore, without
the career-offender guideline, Greene's adjusted-offense
level would have been 21, and with it the adjusted-

_____

3.  The other two requirements to qualify as a career
offender are (1) that the defendant was at least 18 at
the time of the instant offense and (2) that the instant
offense of conviction is a felony and either a crime of
violence or controlled-substance offense.  USSG
§ 4B1.1(a).

offense level was 30.  In addition, the career-offender guideline increased Greene's criminal-history category from V to VI.  USSG § 4B1.1(b).  Without the career-offender guideline and without taking into account the 120-month mandatory-minimum sentence, Greene's guidelines range would have been 70-87 months.[4]  With the career-offender guideline, his range was 168-210 months.  Thus, the increased offense level and increased criminal-history category together account for the massively higher guidelines range under the career-offender guideline.

---

4.  The Sentencing Guidelines provide that, when the mandatory-minimum sentence is higher than the entire guidelines range, the guideline sentence is the mandatory minimum.  USSG § 5G1.1(b).  In this case, there is a mandatory minimum of 120 months.  However, a departure for substantial assistance may, on motion by the government, justify a sentence below the mandatory minimum.  See USSG § 5K1.1, comment. (n.1); 18 U.S.C. § 3553(e); 28 U.S.C. § 994(n).  The government made such motions for each of Greene's co-defendants, and the parties agreed to a four-level reduction for substantial assistance for Greene.  Therefore, for the purposes of this hypothetical comparison, the court assumes the applicable sentencing range would be 70-87 months absent the career-offender guideline.

One of Greene's qualifying prior convictions, for robbery (a crime of violence), was committed when he was 16 years old. At 17, he was sentenced as an adult to 20 years in the Alabama Department of Corrections, of which he served six before being paroled. According to Greene, his classification officer at the prison told him that he was, at that time, the second-youngest person ever placed in the department's custody.

This conviction qualifies as a prior felony under the career-offender guideline, despite Greene's age at the time. The commentary to Guideline 4B1.2, which contains various definitions for the career-offender guideline, states that, "A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." USSG § 4B1.2, comment. (n.1, "Prior felony conviction").[5]

_____

5. It is interesting that, while Guideline 4B1.2 provides a number of definitions for the career-offender guideline, the statement that an offense committed prior
(continued...)

Greene does not dispute that his robbery conviction qualifies as an adult conviction under Alabama law.

---

    5.  (...continued)
to age 18 could qualify as a predicate offense is contained in the commentary and not the text to Guideline 4B1.2.  The Sentencing Guidelines address the different roles of commentary at USSG 1B1.7:

> "The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the guideline or explain how it is to be applied.  Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. See 18 U.S.C. § 3742. Second, the commentary may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines. Such commentary is to be treated as the legal equivalent of a policy statement. Finally, the commentary may provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline. As with a policy statement, such commentary may provide guidance in assessing the reasonableness of any departure from the guidelines."

For purposes of this opinion, this court has not placed significance in the fact that the relevant prior-felony-conviction definition falls in Guideline 4B1.2's commentary but not its text.

Nevertheless, the court finds that the fact that Greene was 16 at the time of his predicate offense is an important factor to consider in determining what sentence to impose in light of the purposes of sentencing set forth in 18 U.S.C. § 3553(a). These purposes, which were all carefully considered by the court, include "the history and characteristics of the defendant," as well as "the need for the sentence imposed ... to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant."

The Supreme Court has made abundantly clear in a series of recent cases that "youth is more than a chronological fact." Miller v. Alabama, 132 S. Ct. 2455, 2467 (2012) (striking down mandatory life without parole for crimes committed by minors) (internal quotation marks omitted); see also Graham v. Florida, 560 U.S. 48 (2010) (striking down life without parole for non-homicide crimes committed by minors); Roper v. Simmons, 543 U.S. 551 (2005) (striking down capital punishment for crimes

8

committed by minors). Rather, "children are constitutionally different from adults for purposes of sentencing." Miller, 132 S. Ct. at 2464.

In these cases, the Supreme Court's insights into the characteristics of youth have been consistent and clear:

> "First, children have a 'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking. Second, children 'are more vulnerable ... to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].'"

Id. (quoting Roper, 543 U.S. at 569-70) (citations omitted). The Court has concluded that these findings, relying not only upon "common sense" but also on an "ever-growing" body of "science and social science" research, "both lessen[] a child's moral culpability and

enhance[] the prospect that, as the years go by and neurological development occurs, his deficiencies will be reformed." Id. at 2464-5, 2464 n.5 (internal quotation marks omitted). Simply put, "it would be misguided to equate the failings of a minor with those of an adult." Roper, 543 U.S. at 570.

As discussed above, the current commentary in Sentencing Guidelines states that, "A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." USSG § 4B1.2, comment. (n.1, "Prior felony conviction"). This commentary was added to the Guidelines in 1991, well before Roper, Graham, and Miller. See USSG 4B1.2 comment. (n.3) (1991).

While Greene is a career offender based in part on actions he took when he was 16 years old, the Supreme Court has stated that "it is less supportable to conclude that even a heinous crime committed by a juvenile is

evidence of irretrievably depraved character." Roper, 543 U.S. at 570. Considering his young age at the time of the predicate felony conviction, the court is convinced that the same punishment is not appropriate for Greene as would be for someone with two qualifying prior convictions for conduct as an adult. In other words, while it may be appropriate to sentence more severely a defendant who has two qualifying felony convictions, one of which may have been committed while the defendant was a minor, and who meets all of Guideline 4B1.1's other requirements, it may also be appropriate pursuant to 18 U.S.C. § 3553(a), and in light of the Supreme Court's recent decision on the culpability of minors as well as any other relevant circumstances in the case, to draw distinctions among defendants who have two predicate convictions for adult conduct, those who have only one conviction for adult conduct along with a conviction for conduct committed while a minor, and those who might have only convictions for conduct committed while a minor.

11

Also, it may be relevant to consider just how far under 18 the defendant was when he committed the predicate offense (for example, 15 as opposed to being just shy of 18) as well as other relevant circumstances that might touch upon the defendant's culpability in light of his youth.

This court is not alone in finding the age of defendants at the time of predicate felonies for the career-offender guideline to be relevant to the appropriate sentence in particular cases. For example, the Eighth Circuit Court of Appeals, sitting en banc, affirmed a variance from guidelines minimum of 360 months to a sentence of 120 months, based in large part on the fact that the defendant was a minor at the time he committed one of the predicate offenses for the career-offender guideline. United States v. Feemster, 572 F.3d 455, 459-60, 464 (8th Cir. 2009) (en banc); see also United States v. Wilks, 464 F.3d 1240, 1242, 1245-6 (11th Cir. 2006) (holding that conviction as a juvenile

qualified as predicate offense for career-offender guideline, but affirming over defendant's challenge a variance of only 50 months based on the defendant's age at the time of the predicate offense).

### B.

The second factor the court considered, pursuant to 18 U.S.C. § 3553(a), was the role the government itself played in prompting this crime. Some seven months before the conspiracy began, Greene was released from federal custody, having served an 81-month sentence for a drug offense. However, the series of events leading to Greene's arrest in this case began not with his independent choice to become involved again in selling drugs, but with a call from a confidential informant working for the government. That informant, after initiating contact, apparently offered Greene drugs at significantly below-the-normal market price: $ 22,000 instead of the normal $ 32,000 per kilo.

13

Such "sting" operations, initiated by the government, are a mainstay of criminal prosecution.  But the use of a sting operation in this case is significantly different from an ordinary sting.  For, unlike a case involving a controlled drug purchase from a known drug dealer, in this case there is no evidence whatsoever that Greene was involved in dealing drugs, or indeed in any criminal conduct, at the time the confidential informant contacted him.  On the contrary, it appears that he was, for the first time, on a path of potential rehabilitation. Having taken a number of business and entrepreneurship courses while serving his previous federal sentence, Greene, upon release, was both gainfully employed and was running his own legitimate small business.  Information presented at sentencing suggests that Greene, an individual who was first incarcerated as an adolescent and who has spent only a small fraction of his adult years out of custody, was finally earning a legitimate

14

living.  The confidential informant's tempting offer of
large, quick profits changed all of that.

That the government initiated contact, and even that
the government made an offer "too good to pass up," does
not excuse Greene's conduct.  As the government pointed
out at sentencing, while agents baited the hook, Greene
did bite.  Nor, as the parties agreed, was Greene likely
to prevail on a defense of entrapment, which requires
that the defendant lack a predisposition to commit the
crime in question.  See United States v. Sistrunk, 622
F.3d 1328, 1332 (11th Cir. 2010).

But the court does believe these circumstances
present a difference in culpability.  This case is unlike
the case of a drug dealer who would be selling even if
the government never set up a sting operation.  Here, the
government tempted Greene, and the court is convinced
that, but for the government's offer, Greene would still
be earning a legitimate living.

C.

Taken together, these two factors led the court to conclude that a variance pursuant to 18 U.S.C. § 3553(a) was warranted in this case.  Despite the appropriate application of Guideline 4B1.1, the career-offender guideline, to this case, the court still believes it is appropriate to take into account the fact that Greene was only 16 at the time of his predicate offense, particularly in light of Miller.  To be clear, the court has not held that a guidelines sentence is not appropriate when the defendant committed one of the career-offender predicate felonies as a minor.  Nor does the court believe that the career-offender guideline should not apply at all to convictions for conduct as a minor.  Rather, the court believes that Greene was properly designated as a career offender, and should be subject to an enhancement of his sentence on that basis, but, because he was only 16 when he committed one of this predicate offenses, that the enhancement should not be to

16

the same extent for Greene as it would be for a defendant whose predicate convictions were solely for adult conduct or for conduct committed at 17.

Similarly, Greene's decision to engage in this criminal conduct is serious and merits punishment. However, the court finds that Greene, having been lured back into criminal conduct by the sting operation, should not be punished to the same extent as if the sting merely caught him in the act of criminal conduct already underway. Moreover, the court is convinced that, but for the government's conduct, Green would today not even be subject to the career-offender guideline and instead, as stated, would be well on his way to full rehabilitation.

In determining the size of the variance and the appropriate sentence, the court was also conscious of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As stated, if the career-offender guideline had not applied

and in the absence of the mandatory-minimum requirement, Greene's guidelines range would have been 70-87 months. This would have been in line with his co-defendants, whose culpability was roughly equivalent to Greene's and who received 84 months and 63 months, respectively. On the one hand, then, the need to avoid unwarranted disparities is a factor that favors a lower sentence for Greene. On the other hand, the court recognizes that, in the career-offender guideline, Congress and the Sentencing Commission have singled out Greene's particular type of criminal history as being of special concern, and the court agrees that his criminal history warrants a sentence above the 70-87 month range.

The court believes that a sentence of 120 months adequately takes into account these considerations, in particular that (1) Greene should be punished as a career offender, but not to the same extent as he would if both prior convictions were for adult conduct; and that (2) Greene should be punished for the cocaine, but not to

the same extent as he would if he had already been engaged in drug trafficking before the government's involvement. The court would view this as an appropriate sentence even in the absence of the 120-month mandatory minimum.

## II.

As to the supervised-release violation, based on Greene's criminal-history category at the time of his original conviction, the grade of his current offense, and the class of his original conviction, the advisory guidelines sentence upon revocation was 30-37 months. USSG § 7B1.4(a). The court sentenced Greene to 30 months in prison.

However, given that Greene was well on his way to full and exemplary rehabilitation during supervision prior to being ensnared in the government's sting operation, the court determined that a 30-month sentence to run concurrently with the 120-month from his new conviction is adequate punishment.

19

\* \* \*

For all of these reasons, the court was convinced that a variance down to a sentence of 120 months for the new conviction and a sentence of 30 months for the supervised release violation, with both to run concurrently, were appropriate to satisfy the factors reflected in 18 U.S.C. § 3553(a).

DONE, this the 30th day of January, 2014.

    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE